283 U.S. 152 (1931)
FARBWERKE VORMALS MEISTER LUCIUS & BRUNING ET AL.
v.
CHEMICAL FOUNDATION, INCORPORATED, ET AL.
FARBWERKE VORMALS MEISTER LUCIUS & BRUNING
v.
E.I. DU PONT DE NEMOURS & COMPANY ET AL.
DEUTSCHE GOLD & SILBER SCHEIDE ANSTALT
v.
SAME.
BADISCHE-ANILIN & SODA FABRIK
v.
SAME.
WOODS, TREASURER OF THE UNITED STATES,
v.
CHEMICAL FOUNDATION, INCORPORATED, ET AL.
SUTHERLAND, ALIEN PROPERTY CUSTODIAN,
v.
FARBWERKE VORMALS MEISTER LUCIUS & BRUNING ET AL.
SAME
v.
DEUTSCHE GOLD & SILBER SCHEIDE ANSTALT ET AL.
SAME
v.
BADISCHE-ANILIN & SODA FABRIK.
Nos. 179, 180, 181, 182, 271, 272, 273, and 274.
Supreme Court of United States.
Argued March 6, 1931.
Decided April 13, 1931.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.
*154 Mr. Frederick H. Wood, with whom Messrs. Bruce Bromley and Charles F. Curley were on the brief, for Farbwerke.
Mr. Almuth C. Vandiver for Badische-Anilin & Soda-Fabrik and Deutsche Gold & Silber Scheide Anstalt.
Mr. G. Carroll Todd, with whom Mr. W.S. Gregg was on the brief, for E.I. du Pont de Nemours & Company.
Mr. Joseph H. Choate, Jr., with whom Messrs. Wm. G. Mahaffy, Seiforde M. Stellwagen, and James Garretson were on the brief, for The Chemical Foundation, Incorporated.
Solicitor General Thacher and Messrs. Thomas E. Rhodes, Special Assistant to the Attorney General, and J. Frank Staley submitted the cause for Woods, Treasurer, and Sutherland, Alien Property Custodian.
MR. JUSTICE McREYNOLDS delivered the opinion of the Court.
The writs in the eight above-entitled causes were granted upon the petitions of parties to four suits instituted to recover compensation for use by E.I. du Pont de Nemours and Co. of three patents, formerly owned by three of them (the German corporations), under licenses issued as provided by the Trading with the Enemy Act, approved October 6, 1917. 40 Stat. 411, 420, 421, 459, 460, 1020, 1021.
April 6, 1917, the United States declared war with Germany; July 1, 1921, Congress declared it at an end.
The Trading with the Enemy Act authorized the President to appoint an Alien Property Custodian; also to license domestic corporations to make, use and vend articles covered by enemy-owned patents, upon agreed terms, payments therefor to be deposited with the United *155 States Treasury in trust for the owners. And it declared  § 10  that such a license should be a complete defense to any suit by the owner for damages on account of anything done thereunder, except as provided by subsection (f), which follows:
"The owner of any patent . . . under which a license is granted hereunder may, after the end of the war and until the expiration of one year thereafter, file a bill in equity against the licensee . . . for recovery from the said licensee for all use and enjoyment of the said patented invention, . . . The amount of said judgment and decree, when final, shall be paid on order of the court to the owner of the patent from the fund deposited by the licensee, so far as such deposit will satisfy said judgment and decree; . . ."
License No. 19, granted January 21, 1918, by the Federal Trade Commission, acting under designation by the President, authorized E.I. du Pont de Nemours and Co. to make, use and vend the inventions covered by United States Letters Patent Nos. 680,395, 868,294, and 718,340, severally owned by German corporations, petitioners in causes Nos. 180, 181 and 182. Substantial payments by the licensee were deposited in the Treasury. The license terminated September 1, 1920.
The Act of March 28, 1918, 40 Stat. 459, 460, amended § 12, Trading with the Enemy Act, to provide  "The Alien Property Custodian shall be vested with all the powers of a common-law trustee in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this Act, and, in addition thereto . . . shall have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become *156 appurtenant thereto or to the owner thereof . . ." And the Act of November 4, 1918, 40 Stat. 1020, 1021, amended subsection (c) of § 7 to read 
"If the President shall so require any money or other property including (but not thereby limiting the generality of the above) patents, copyrights, applications therefor, and rights to apply for the same, trade marks, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act.
"Any requirement made pursuant to this Act, or a duly certified copy thereof, may be filed, registered, or recorded in any office for the filing, registering, or recording of conveyances, transfers, or assignments of any such property or rights as may be covered by such requirement (including the proper office for filing, registering, or recording conveyances, transfers, or assignments of patents, copyrights, trade-marks, or any rights therein or any other rights); and if so filed, registered, or recorded shall impart the same notice and have the same force and effect as a duly executed conveyance, transfer, or assignment to the Alien Property Custodian so filed, registered, or recorded."
By three separate, similar written instruments, issued one February 3 and two March 22, 1919, the Alien Property Custodian declared concerning each of the letters patent numbered as above stated  "I do seize said letters patent and every right, title and interest with respect *157 thereto, including all damages and profits recoverable at law or in equity from any person, firm, corporation or government, for past infringement thereof, subject to the rights of E.I. du Pont de Nemours & Company, Wilmington, Delaware." And by an instrument dated April 10, 1919, he declared  "I do sell, assign, transfer and set over unto the said the Chemical Foundation (Inc.), its successors and assigns, the whole right, title, and interest acquired by me and by said A. Mitchell Palmer [former Custodian], each as said Alien Property Custodian" in and to the same letters patent.
June 23, 1922, the Chemical Foundation, Inc., brought suit against E.I. du Pont de Nemours and Co. and Frank White, Treasurer of the United States. It alleged the grant of the license to the defendant Company January 21, 1918, to make, use and vend the inventions described and operation thereunder, but declared complainant was not informed whether any moneys were "paid or are payable by said defendant to the Alien Property Custodian, as required by the terms of said license, nor as to what moneys, if any, are now held by the defendant Treasurer of the United States by virtue thereof." Further, that subsequent to the license the Alien Property Custodian seized and sold to complainant all of the specified letters patent, together with every right, title and interest with respect thereto. The prayer asked discovery and accounting, also that the court determine reasonable compensation for use of the letters patent after complainant acquired them. And further for judgment to be satisfied from funds on deposit in the Treasury, if sufficient, otherwise by the du Pont Company. The reason for limiting the prayer to compensation after date of acquisition is not disclosed.
June 30, 1922, petitioners in causes Nos. 180, 181 and 182 brought separate suits against the same defendants. *158 Each alleged ownership of one of the letters patent, described in the license to the du Pont Company, and asked recovery for the use thereof, the judgment to be paid out of funds in the Treasury, if sufficient, otherwise, by that Company.
Answering the bill of the Chemical Foundation, the du Pont Company admitted use of the letters patent under the license; alleged payment of $61,884.98, as reasonable compensation, to the Alien Property Custodian for deposit in the Treasury, termination of the license September 1, 1920; etc.
October 6, 1927, the District Court ordered consolidation of the four causes "to the extent of the issues therein relating to Federal Trade Commission License No. 19."
November 9, 1927, Frank White, Treasurer, moved to dismiss the bill of the Chemical Foundation because it was not owner of the patents within intendment of § 10, Trading with the Enemy Act, also because no adequate ground for relief had been shown. He also answered; admitted assignment of the letters patent to the Foundation; denied that it was the "owner" within § 10; admitted the payment into the Treasury of $61,884.98. On the same date he answered the bills in causes Nos. 180, 181 and 182; demanded proof of the allegations, etc.
January 16, 1928, the du Pont Company moved to dismiss the bills in causes Nos. 180, 181 and 182 because the complainants were not owners of the letters patent within § 10, and because the facts alleged were insufficient to justify relief. It also answered; denied that the complainants had owned any interest in the letters patent since April 10, 1919; admitted that it had been licensed to make, use and vend the inventions covered by the letters patent, and had paid the agreed royalty; denied the right of the complainants to recover anything for such use, etc.
*159 April 28, 1928, in each of the causes Nos. 180, 181 and 182 the Alien Property Custodian moved that he be substituted for the complainant. He alleged that under the seizures of February 3 and March 22, 1919, his predecessor became owner of the letters patent and that he alone was authorized to sue within one year after the war ended, under § 10 (f), Trading with the Enemy Act, to recover the reasonable royalty; also that under § 19, Act of March 10, 1928 (Settlement of War Claims Act), 45 Stat. 254, 277, he should be substituted.
The District Court denied the Treasurer's motions to dismiss, also those of the Alien Property Custodian for substitution as complainant. It held the German corporations were not "owners" of the accrued royalties; that the Chemical Foundation, by assignment from the Alien Property Custodian April 10, 1919, became the owner of the patents, together with accrued royalties, and was entitled to an accounting to ascertain the reasonable compensation for their use and enjoyment during the period between April 10, 1919, and September 1, 1920; and when determined, this should be satisfied from funds in the Treasury derived from payments by the licensee, if sufficient, and if not, by the du Pont Company.
Except the Chemical Foundation and the du Pont Company, all parties appealed to the Circuit Court of Appeals. That court, 39 F. (2d) 366, affirmed the action of the District Court, 29 F. (2d) 597.
Joint and several petitions for certiorari by the three German corporations were granted in causes Nos. 179, 180, 181 and 182.
Writs were also allowed upon the petitions of Woods, Treasurer of the United States, and Sutherland, Alien Property Custodian, in Nos. 271, 272, 273 and 274. These petitioners do not now seek affirmative relief. They brought the causes here in order to save possible rights.
*160 The Chemical Foundation limits its demand to compensation for the period between April 10, 1919, and September 1, 1920. This demand was sustained below and is not now opposed.
The German corporations  former owners  limit their demands to compensation for the period between January 21, 1918, and April 10, 1919. These demands were denied below. They are the subjects of the only substantial controversy before us; and its solution depends upon whether the Alien Property Custodian acquired the rights of the owners to collect for their previous use under License No. 19 when he seized the patents, February 3 and March 22, 1919. Both courts below decided against the German corporations, and properly so we think.
The Trading with the Enemy Act, as amended, in very definite terms authorized seizure of the patents in question; also "rights and claims of every character and description owing to or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy . . ." This Court has said  "At the time of the passage of the act, a large amount of property was owned and much business was carried on by alien enemies and their allies in this country. Congress determined that their property should be taken over and that trade with them should cease. The purpose was to weaken enemy countries by depriving their supporters of power to give aid." Miller v. Robertson, 266 U.S. 243, 248. "There is nothing to support a strict construction of the Act in respect of the seizure and disposition of enemy property. On the other hand, contemporaneous conditions and war legislation indicate a purpose to employ all legitimate means effectively to prosecute the war. The law should be liberally construed to give effect to the purposes it was enacted to subserve. United States v. Chemical Foundation, 272 U.S. 1, 10.
*161 The Alien Property Custodian declared: "I do seize said letters patent and every right, title and interest with respect thereto," subject to the rights of the du Pont Company. Considering the general purpose of Congress to weaken the enemy, this language certainly is broad enough to include the right of the owners of the seized patents to recover for their use under the outstanding license. We can discover no reason for thinking that the custodian intended to seize the patents but to leave with enemies a right to sue for compensation on account of their use during earlier months of the war.
The validity of the seizure by the Alien Property Custodian and of the subsequent sale and transfer to the Chemical Foundation was affirmed in United States v. Chemical Foundation, 272 U.S. 1.
The most plausible argument against the conclusion below rests upon § 7, Trading with the Enemy Act, as amended November 4, 1918. This provides that any requirement under the Act may be filed for registration and "if so filed, registered, or recorded shall impart the same notice and have the same force and effect as a duly executed conveyance, transfer, or assignment to the Alien Property Custodian so filed, registered, or recorded."
It is said that a mere transfer of letters patent by voluntary conveyance would not pass the right to recover accrued compensation for use by a licensee; and that under the statute this rule must be applied to the seizure. Answering this the court below well said 
"Accepting this law in the abstract, it is pertinent to note that we are not here concerned with an assignment of a patent or of royalties by the German owners to the Alien Property Custodian. We are concerned with their capture  an act of war. We are not dealing with an assignment of patents where there is a question of what was in the minds of the contracting parties as to royalties and as *162 to what passed and what was retained under the terms of an instrument they had drawn and signed. We are dealing with an act of seizure and have to determine wholly outside the law of assignments whether by the terms of the symbol of seizure the royalties in question were included. Having in mind the purpose of the law and observing that the Custodian manifestly attempted to seize the German patents and everything `in respect' to them and to their ownership, we are of opinion that he accomplished what he attempted by words that embrace the royalties in question, and that, in consequence, the German plaintiffs were owners of neither the patents nor the royalties at the time they instituted their suits . . ."
The Settlement of War Claims Act of March 10, 1928, 45 Stat. 254, 277, provides 
"Sec. 19. Subsection (f) of section 10 of the Trading with the Enemy Act, as amended, is amended by adding at the end thereof the following new paragraph:
"`In the case of any such patent, trade-mark, print, label, or copyright, conveyed, assigned, transferred or delivered to the Alien Property Custodian or seized by him, any suit brought under this subsection, within the time limited therein, shall be considered as having been brought by the owner within the meaning of this subsection, in so far as such suit relates to royalties for the period prior to the sale by the Alien Property Custodian of such patent, trade-mark, print, label, or copyright, if brought either by the Alien Property Custodian or by the person who was the owner thereof immediately prior to the date such patent, trade-mark, print, label, or copyright, was seized or otherwise acquired by the Alien Property Custodian.'"
Counsel suggests that, although this enactment came long after transfer of the patents and rights incident thereto to the Chemical Foundation, and years after the present suits began, it authorized the German claimants *163 to recover as if owners according to the terms of the original act and the license to the du Pont Company. Manifestly, such an interpretation would give rise to a grave constitutional objection  deprivation of the Chemical Foundation of property without due process. Moreover, the licensee accepted the grant under the provision that any suit for compensation should be brought by the owner within one year after termination of the war, "for all use and enjoyment of the said patented invention," and if not, "then the licensee shall not be liable to make any further deposits, and all funds deposited by him shall be repaid to him on order of the alien property custodian." In the circumstances the act cannot be interpreted and applied as suggested.
The decree below must be
Affirmed.
MR. JUSTICE SUTHERLAND and MR. JUSTICE STONE took no part in the consideration or decision of these cases.